**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Gregory A. Scher,                                          Civ. No. 19–2001 (SRN/BRT)

　　　　　　　Plaintiff,

v.

Bureau of Prisons; Michael Carvajal,                       **REPORT AND**
Director; F.M.C. Rochester; Steve Kallis,                  **RECOMMENDATION**
Warden; Sheila Hadaway, DO, FMC
Clinical Director, Rhonda Woltman,
Correctional Counselor; US Public Health
Service (USPHS); Capt. Brian Lewis,
MD, CMO, USPHS; Capt. Jessica Feda,
USPHS Ret.; Lt. Daniel Bordt, USPHS;
Mark Morgan, DO, USPHS; John and
Jane Does 1 through 10;

　　　　　　　Defendants.

---

Gregory A. Scher, *pro se* Plaintiff.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Defendants.

---

## I.　PROCEDURAL BACKGROUND

This case was initiated on July 29, 2019, when Plaintiff Gregory A. Scher, then an

inmate at Federal Medical Center – Rochester, filed suit alleging he was provided a

defective wheelchair, and that the Bureau of Prisons, Capt. Jessica Feda, Lt. Daniel

Bordt, and FMC Rochester ("Original Defendants") were deliberately indifferent to this

problem and denied Scher access to either a powered wheelchair or the wheelchair-

assistance program wherein fellow inmates aid in pushing around wheelchair-bound

inmates. (Doc. No. 1, Compl. at 5–6.) Scher claimed that the Original Defendants'
deliberate indifference resulted in two hernias, a damaged meniscus, and a torn right
rotator cuff, which all require surgery to correct. (*Id.*)

After various procedural pitstops, the Original Defendants were eventually served
and moved to dismiss the Complaint. (Doc. No. 60.) Scher then filed his Amended
Complaint (Doc. No. 78, Am. Compl.), mooting the Original Defendants' motion to
dismiss. (Doc. Nos. 88, 89, 91.) Presently before the Court are a new slate of motions to
dismiss aimed at the Amended Complaint filed by the Defendants that have appeared to
date. (Doc. Nos. 103, 112, 117.)[1]

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT

Scher pled guilty to one count of Social Security fraud in violation of 42 U.S.C.
§ 408(a)(3) on February 12, 2018, and was sentenced to 20 months' imprisonment, an
above-guidelines prison sentence. *See United States v. Scher*, 2020 WL 4208921, at *1–
*2 (D. Haw. July 22, 2020); *United States v. Scher*, 2020 WL 3086234, at *1 (D. Haw.
June 10, 2020). Scher self-surrendered to BOP custody at FMC–Rochester on April 25,
2019. (Am. Compl. at 2.) At the time of his self-surrender, Scher "needed only

---

[1]    The parties expect that the remaining Defendants—Michael Carvajal, Steve Kallis,
Sheila Hadaway, Rhonda Woltman, Brian Lewis, and Mark Morgan—will file a motion
to dismiss by July 11, 2021. (Doc. Nos. 125, 127.) But because these claims are
inextricably intertwined with the claims challenged herein and do not differ in any
appreciable way, the Court considers the entirety of Scher's Amended Complaint herein.
It would be a waste of the parties' and the Court's resources to engage in another round
of briefing and judicial rulings on copy-and-paste legal arguments.

supplemental oxygen and medications" to treat his "moderate COPD and an acute mycobacterium chimera infection." (*Id.* at 2, 8.)

During prison intake, Scher met with Defendant Rhonda Woltman, a correctional counselor. (*Id.* at 8.) Scher asserts that Woltman had scribbled "acquitted sex offender" on the margins of Scher's presentence investigation report, so Scher asked her why. (*Id.* at 9.) Woltman "stormed out of the room" and "immediately went next door" to speak with Physician's Assistant Karin Parsons to inform her that Scher was a pathological liar. (*Id.* at 9–10.) Scher claims Woltman "made a regular habit of spreading lies and disinformation against [Scher] until the very end of her BOP career." (*Id.* at 11.) These lies, Scher asserts, caused Defendants Feda and Bordt to not put Scher into the wheelchair pusher program, resulting in bilateral inguinal hernias, a torn left knee meniscus, and a torn right shoulder rotator cuff. (*Id.*)

Bordt served as Scher's physical therapist, prescribing treatments "that were grossly contraindicated." (*Id.* at 12.) Feda supervised FMC–Rochester's physical therapy department, including Bordt. (*Id.*) Scher reached out to Feda twice to "assist him in getting proper treatment instead of the injurious treatment he was receiving at the hands of Defendant Bordt," but she refused to intervene. (*Id.* at 13.) Scher asserts Defendant Mark Morgan referred him for an orthopedic consultation, but Bordt, Feda, and Defendant Sheila Hadaway canceled the consultation request. (*Id.* at 16.) Morgan then ordered cortisone injections for Scher's left knee, which provided relief for four to five weeks. (*Id.* at 16–17.) Scher also asserts Bordt and Feda are practicing medicine without a license. (*Id.* at 15.)

Scher asserts his Amended Complaint arises under three authorities: (1) the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and § 1346; (2) 28 U.S.C. § 1983 and its federal actor corollary of *Bivens*; and (3) Section 504 of the Rehabilitation Act of 1973. (Am. Compl. at 1–2.)

## III.     MOTIONS TO DISMISS

### A.  Legal Standard

"Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'" *Barclay Square Prop. v. Midwest Fed. Sav. and Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)). Federal courts must dismiss a claim if it lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(h)(3), 12(b)(1). When considering a facial attack on jurisdiction in a Rule 12(b)(1) motion, the court "merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (quotation omitted). Under such an analysis, the court restricts itself to the pleadings and the non-moving party is afforded the same protections as those provided by a Rule 12(b)(6) motion. *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas.*

4

*Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). The court must draw reasonable inferences in the plaintiff's favor. *Zink*, 783 F.3d at 1098 (citation omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But notwithstanding the liberal construal of

such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B. PLRA Exhaustion

Defendants argue that Scher has not exhausted administrative remedies and his lawsuit must be dismissed. Scher argues that the administrative remedy process is pointless.

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Brock*, 549 U.S. 199, 211 (2007). The exhaustion requirement applies even if the administrative process cannot offer the relief sought. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Simply put, the Supreme Court has "reject[ed] every attempt to deviate" from the PLRA's "textual mandate," *Ross v. Blake*,

136 S.Ct. 1850, 1857 (2016), including rejecting exceptions for constitutional claims, *Woodford v. Ngo*, 548 U.S. 81, 91 n.2 (2006).

While Scher filed his initial Complaint while he was incarcerated at FMC–Rochester, his Amended Complaint was filed following his release from prison. The PLRA's exhaustion requirement only applies to "person[s] incarcerated or detained." 42 U.S.C. § 1997e(h). It follows that "the exhaustion requirement does not apply to plaintiffs who file § 1983 claims after being released from incarceration." *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *Turner v. Watson*, 821 F. App'x 669, 670 (8th Cir. 2020) ("It is the status of the individual at the time of filing suit that determines whether the individual is a "prisoner" for purposes of § 1997e."). The parties are proceeding under Scher's Amended Complaint as the operative pleading, not the initial Complaint. Scher was not a prisoner at the time he filed his Amended Complaint, so the PLRA does not apply. *Jackson v. Fong*, 870 F.3d 928, 937 (3d Cir. 2017) ("A plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his operative complaint is not subject to a PLRA exhaustion defense."). Accordingly, the PLRA serves as no barrier to Scher's suit.

### C.  Section 1983 Claims

Scher cites 42 U.S.C. § 1983 as giving rise to his claims against the Federal Bureau of Prisons, Michael Carvajal, FMC–Rochester, Steve Kallis, Sheila Hadaway, and John and Jane Does. (Am. Compl. at 2–5.)

Section 1983 establishes liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia" causes "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 only reaches "deprivations of rights that are accomplished under the color of the law of 'any State or Territory.' It does not reach purely private conduct and, with the exception of the Territories, actions of the Federal Government and its officers are at least facially exempt from its proscriptions." *Dist. of Col. v. Carter*, 409 U.S. 418, 424–25 (1973); *Osher v. City of St. Louis, Mo.*, 903 F.3d 698, 702 (8th Cir. 2018) ("Section 1983 does not create a remedy against a federal agency . . .").

Here, all Defendants are either federal entities or employees thereof. As a result, Section 1983 provides no basis for Scher's claims. This Court recommends that Scher's Amended Complaint be dismissed to the extent it relies on Section 1983.[2]

### D. Bivens Claim

"In *Carlson v. Green*, 446 U.S. 14, 20–23 (1980), the Supreme Court, relying upon *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), recognized an implied cause of action for damages against federal employees directly under the eighth amendment." *Noll v. Petrovsky*, 828 F.2d 461, 462 n.3 (8th Cir. 1987) (per curiam). Deliberate indifference by prison personnel to an inmate's serious

---

[2]     Nestled within his Section 1983 claims, Scher cites 42 U.S.C. § 1942 as giving rise to his claims against Defendant Rhonda Woltman. (Am. Compl. at 5.) This Court assumes this is a typo because no such statute exists. The closest provisions of Title 42 end at Section 1926 and restart at Section 1951. These chapters within Section 42 relate to medals awarded to youth, 42 U.S.C. §§ 1921–1926, and saline water development, 42 U.S.C. §§ 1951–1959i. Accordingly, to the extent Scher relies on 42 U.S.C. § 1942 to assert a claim against Defendant Woltman, the claim should be dismissed as having no basis in law.

medical needs violates the inmate's eighth amendment right to be free from cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Taylor v. Turner*, 884 F.2d 1088, 1089–90 (8th Cir. 1989). "Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

While Scher does not specifically cite the Eighth Amendment, he does cite to *Bivens* and uses "deliberate indifference" language when describing his claims. But the Court need not analyze whether Scher has pled any valid *Bivens* claims because U.S. Public Health Service Employees, the persons who provided medical care to Scher, are immune from suit.

"Section 233(a) makes the FTCA [Federal Tort Claim Act] remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment.'" *Hui v. Castaneda*, 559 U.S. 799, 802 (2010) (quoting 42 U.S.C. § 233(a)). As a result, "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806. This includes barring *Bivens* actions against PHS employees. *Id.* at 802; *Rueben v. Outlaw*, 614 F. App'x 861 (8th Cir. 2015) (per curiam).

Scher brings suit against several USPHS employees: Sheila Hadaway, DO, FMC Clinical Director; Captain Brian Lewis, MD, Chief Medical Officer; Captain Jessica

Feda; Lieutenant Daniel Bordt; and Mark Morgan, DO. It is undisputed that these individuals are USPHS employees or were USPHS employees at the time Scher asserts he received insufficient medical care. Thus, Scher cannot maintain his claims against these individuals and they should be dismissed.

Furthermore, there is no liability based on the doctrine of respondeat superior in a *Bivens*-type action. *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982). Scher asserts that the USPHS supervisors and the BOP management failed to properly supervise or train their subordinates, failed to intervene when Scher received poor medical care and when he sought changes to his medical care, or failed to enforce existing policies. Such claims cannot be maintained and must likewise be dismissed.

### E.  Federal Tort Claims Act

Scher specifically cites the Federal Tort Claims Act as giving rise to his claims against the United States Public Health Service, Brian Lewis, Jessica Feda, Daniel Bordt, and Mark Morgan. (Am. Compl. at 5–8.)

As noted, 42 U.S.C. § 233(a) makes the FTCA the exclusive remedy for personal injury arising out of medical care provided by USPHS employees. The FTCA gives federal district courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

10

Scher has not named the United States as a defendant. Rather, he purports to sue various agencies and agents of the United States instead, including the Bureau of Prisons, FMC–Rochester, and the USPHS. Thus, his FTCA claims could be dismissed outright. But even when interpreting Scher's claims against these entities and their employees as claims against the United States, Scher's claims under the FTCA fail for two separate reasons.

### 1.    Exhaustion of Administrative Remedies

Before a lawsuit can be filed against the United States for damages, a claimant "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (stating failure to exhaust administrative remedies bars suit). A "claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable." *Mader v. United States*, 654 F.3d 794, 807 (8th Cir. 2011) (en banc). Thus, "[p]resentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993).

"A claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). The claim must be "presented to the Federal agency whose activities gave rise to the claim." *Id.* § 14.2(b). The claim must be submitted within two

years of it accruing. 28 U.S.C. § 2401(b). The BOP describes in Program Statement 1320.06 the procedures through which a claimant can file an administrative claim.

Prior to filing his initial Complaint, Scher filed a single administrative claim with the BOP on May 21, 2019, requesting email access. (Doc. No. 48, Decl. of Shannon Boldt at 4–5.) Scher withdrew that request for an administrative remedy the following day. (*Id.*) Scher appears to have filed an administrative remedy request on September 19, 2019, related to a medical device; another on January 21, 2020, with respect to a consultation at the Mayo Clinic and the wheelchair program; and three related to unprofessional staff on February 20, 2020, March 10, 2020, and April 3, 2020. (Doc. No. 48-2, Boldt Decl. Ex. B, Doc. No. 48-2.) Scher has not filed an administrative claim with the USPHS. (Doc. No. 120, Decl. of James Anagnos.)

Scher asserts he "filed numerous grievances regarding his injuries and lack of proper treatment, which were all denied." (Am. Compl. at 13.) But after this assertion, Scher immediately claims the entire grievance process is purposefully rendered useless in that prison officials delay responses so prisoners cannot timely pursue administrative remedies. (*Id.* at 13–14.) Scher's responsive filing makes clear he did not exhaust any administrative remedies. (Doc. No. 116 at 4–6.) Scher relies on proceeding without exhaustion for "good cause." (*Id.* at 6.) But in yet another responsive filing, Scher asserts he "sought out and attempted to get an FTCA claim form from [his] assigned housing unit counselor." (Doc. No. 123-1 at 2.) Woltman provided a "Small Claims for Property Damage or Loss" form. (Doc. No. 123-1 at 5.) Scher asserts he told Woltman this was the wrong form as per BOP Program Statement 1320.06, but Woltman said Scher could

either use that form or a BP-9 administrative remedy form. (*Id.* at 2.) Scher asserts he attempted to file his FTCA claim on the BP-9 but that "ended in complete stonewalling failure on the part of the Defendants." (*Id.*)

Scher's disillusionment with the BOP administrative remedy process does not relieve him of his burden of administratively presenting his FTCA claim. *Bellecourt*, 994 F.2d at 430. Scher's own filing details his knowledge of BOP Program Statement 1320.06, which plainly indicates that a claimant can use an SF-95 standard form, or may proceed without one so long as the claim includes the following information: date of incident, place where the incident occurred, explanation of events, witnesses, description of injury or property loss, sum certain claimed, date of claim, and claimant's signature. (Doc. No. 123-1 at 8.) BOP Program Statement 1320.06 tracks the requirements of 28 C.F.R. § 14.2 and permits FTCA claims to be presented in any form so long as they include certain information. Scher submitted various administrative grievances and he exhausted administrative remedies when he sought compassionate release. *Scher*, 2020 WL 3086234, at *2 ("As to exhaustion, on April 2, 2020, Scher submitted an administrative compassionate release request to the warden of his prison. That request was ultimately denied, and it appears that Scher has completed the administrative appeals process."). But Scher has not met his burden of pleading exhaustion of his FTCA claim. Even considering the equivocal nature of Scher's responsive filings in the light most favorable to him, it shows Scher considered the administrative presentment process but grew frustrated and gave up. This is not enough. Failure to present an administrative claim deprives the Court of jurisdiction to consider his FTCA claims.

## 2.        Minnesota Tort Claim

Even if the Court were to overlook the jurisdictional defect in Scher's FTCA claim in failing to name the United States as a defendant and the jurisdictional defect in failing to exhaust administrative remedies, he has failed to comply with Minnesota requirements for bringing a medical malpractice suit.

Under Minnesota law, a plaintiff "alleging malpractice . . . against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case" must "serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3 . . ." Minn. Stat. § 145.682. This affidavit requires an attestation that:

> (a) the facts of the case have been reviewed . . . with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or (b) the expert review . . . could not reasonably be obtained before the action was commenced because of the applicable statute of limitations.

*Id.* at subd. 3. By requiring production of this type of expert affidavit, the statute intends to eliminate sham malpractice suits, *see Oslund v. United States*, 701 F. Supp. 710, 713 (D. Minn. 1988), given that "malpractice action[s] without supporting expert testimony [are ordinarily] frivolous *per se*." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990).

Here, Scher has submitted an affidavit signed by Steven A. Holper, M.D. (Doc. Nos. 92, 93, Aff. of Steven Holper.)[3] Dr. Holper states he is "Board Certified in medical specialties including, but not limited to, Physical Medicine and Rehabilitation," and pain management. (Holper Aff. ¶ 1.) Dr. Holper says he "evaluated Greg Scher on July 7, 2020, concerning symptoms related to his chronic and worsening pain in his right shoulder and left knee." (Holper Aff. ¶ 2.) Dr. Holper avers that Scher's pain and symptoms indicate a probable torn right rotator cuff and an extremely damaged and torn left meniscus, such that "[t]here exists a very real possibility that Scher would likely need a total left knee replacement" or a "total meniscus reconstruction or replacement." (Holper Aff. ¶ 3.) Dr. Holper noted an MRI and C/T scan was necessary to determine the full extent of Scher's shoulder damage, and an MRI is necessary to determine Scher's left knee injuries. (Holper Aff. ¶ 4.) Dr. Holper opined that Scher's injuries are "excruciating and worsening," and that, if left untreated, Scher would lose the use of his left knee entirely. (Holper Aff. ¶ 5.)

Dr. Holper was a licensed physician in Nevada. (*See* Doc. No. 106-1, Aff. of Ana Voss, Ex. 1.) Dr. Holper was charged by the Investigative Committee of the Nevada State Board of Medical Examiners with (1) illegally dispensing controlled substances, (2) unsafe or unprofessional conduct, and (3) disreputable conduct. (*Id.* at 1–2.) Dr. Holper entered into a settlement whereby he admitted to the first charge. (*Id.* at 5.) The Nevada State Board of Medical Examiners accepted the settlement on September 6, 2019,

---

[3]    The documents are identical except that one was signed on December 30, 2020 (Doc. No. 93) and the other was signed on January 22, 2021 (Doc. No. 92).

and Dr. Holper's medical license was immediately revoked, without the possibility for re-instatement for three years. (*Id.* at 5, 8.) Scher met Dr. Holper in prison, where he was serving a 41-month sentence for distribution of controlled substances imposed by the United States District Court for the District of Nevada. (Doc. No. 106-2, Voss Aff., Ex. 2.)

Dr. Holper's affidavit does not meet the statutory requirements of Minn. Stat. § 145.682. "Expert testimony cannot be given by a witness who is not an expert—that is, someone who is not qualified or competent to give an expert opinion." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn. 2002). "The affidavit requirement simply cannot be met by a witness not reasonably expected to provide an admissible expert opinion at trial." *Id.* It cannot be reasonably expected that Dr. Holper could provide expert testimony at trial. Dr. Holper has been stripped of his license to practice medicine until September 2022, at the earliest. Dr. Holper had no medical license when he "examined" Scher. Dr. Holper and Scher were inmates at FMC–Rochester when the examination supposedly took place, thus there was no medical equipment available to Dr. Holper to properly examine Scher's alleged injuries. Thus, it cannot be said Dr. Holper's affidavit is based on "sufficient facts or data" or is "the product of reliable principles and methods." Fed. R. Evid. 702. Dr. Holper states in his affidavit that imaging is needed to gauge Scher's injuries. Further, Dr. Holper does nothing to explain what the applicable standard of care is or how Defendants deviated from that standard. All in all, Dr. Holper's affidavit is so lacking that this Court cannot conclude Scher has complied with Minnesota's expert affidavit requirement.

There are two limited exceptions to this expert affidavit requirement: (1) when "expert testimony is not needed to establish negligence; or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits." *Flores v. United States*, 689 F.3d 894, 900 (8th Cir. 2012) (citation omitted). Neither exception applies here. Scher's claims are not one that "fall[s] within an area of common knowledge and developing lay comprehension of medical techniques," so as to make an expert opinion unnecessary. *Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1165 (8th Cir. 1989) (quoting *Hestbeck v. Hennepin Cty.*, 212 N.W.2d 361, 364 (Minn. 1973)). Scher's injuries are not obvious, but instead are based on alleged snowballing failures that exacerbated with repeated poor treatment or lack thereof. Such injuries are nearly impossible to deem within the realm of common or lay knowledge. Further, in Minnesota, excusable neglect may be established if a plaintiff meets four requirements:

> (1) he has a reasonable malpractice claim on the merits, (2) he has a reasonable excuse for failing to comply with the affidavit requirements of § 145.682, (3) he diligently attempted to comply with § 145.682 after notice of the statutory limits, and (4) defendant will not be substantially prejudiced by an extension of time to comply with the statutory time limits.

*Bellecourt v. United States*, 784 F. Supp. 623, 639 (D. Minn. 1992). Scher does not meet these requirements for all the reasons discussed herein.

"Minnesota courts require strict compliance with the procedural requirements set forth in section 145.682." *Flores*, 689 F.3d at 900. The statute is "more than a procedural rule," and "has a jurisdictional component." *Oslund*, 701 F. Supp. at 714. Barring limited exceptions, failure to comply with the statute's requirements is fatal to a plaintiff's malpractice claim. *See Chizmadia*, 873 F.2d at 1164 ("Failure to comply with section

145.682 results in mandatory dismissal with prejudice."). Although this Court acknowledges that procuring an expert affidavit may be a difficult endeavor for a federal inmate acting as a pro se plaintiff, Minnesota Statute § 145.682 does not make exceptions for such plaintiffs. Minn. Stat. § 145.682, subd. 5 (stating that a pro se plaintiff is "bound by [the affidavit] provisions as if represented by an attorney"); *Jackson v. Federal Bureau of Prisons*, 2007 WL 843839, *20, n.17 (D. Minn. Mar. 16, 2007) ("The same provision of expert opinion affidavits apply to actions commenced by *pro se* plaintiffs."). Because expert testimony is necessary to prove medical negligence, compliance with Minnesota Statute § 145.682 is mandatory. Scher has not complied and his medical malpractice claims must be dismissed.

### F. Rehabilitation Act

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998).

It is not clear what Scher's Rehabilitation Act claim entails. But any analysis as to whether Scher properly pled a Section 504 claim is unnecessary because the

Rehabilitation Act does not apply to the Federal Bureau of Prisons or its prisoners. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *Roark v. Flanery*, No. 5:12-CV-60, 2014 WL 4447451, at *27 (E.D. Tex. Sept. 9, 2014) ("[T]he Bureau of Prisons does not fit within the definition of 'programs or activities' governed by § 794(a)."); *Inko-Tariah v. Lappin*, No. 5:05-CT-585-H, 2009 WL 8652932, at *1 (E.D.N.C. Apr. 1, 2009) ("Upon a thorough review of cases interpreting the application of the Rehabilitation Act, the court concludes that the Act does not provide a cause of action for inmates in federal prisons."), *aff'd by* 346 F. App'x 915 (4th Cir. 2009); *Sandler v. Anderson*, No. 08-3030-CV-S-RED-H, 2008 WL 2610130, at *2 (W.D. Mo. July 2, 2008) ("[T]he Rehabilitation Act does not apply to federal inmates."); *see also Bosworth v. United States*, No. CV 14-0498 DMG (SS), 2016 WL 4168852, at *5 n.7 (C.D. Cal. Aug. 5, 2016). Accordingly, this Court recommends dismissing Scher's Amended Complaint to the extent it relies upon Section 504 of the Rehabilitation Act.

## RECOMMENDATION

Scher's Amended Complaint suffers from procedural and statutory maladies that mandate dismissal. Some procedural barriers to Scher's Amended Complaint are insurmountable: the absolute immunity of USPHS employees and the non-applicability of Section 1983 and Section 504 to the federal government. And even if the Court were to look beyond procedural defects, like Scher's failure to exhaust administrative remedies for his FTCA claim and his failure to name the United States as a defendant, there exists an additional procedural hurdle in the expert affidavit requirement under Minnesota law. While the Court understands Scher's frustration in his perceived medical mistreatment,

the Court cannot ignore all the procedural requirements that are in place relating to Scher's claims. This Court recommends dismissing Scher's Amended Complaint in its entirety.[4]

Based on the foregoing, and all the record, files, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Captain Jill Feda and Lieutenant Bordt's Motion to Dismiss (**Doc. No. 103**) be **GRANTED**;

2.     The Bureau of Prisons and the Federal Medical Center in Rochester's Motion to Dismiss (**Doc. No. 112**) be **GRANTED**;

3.     The United States Public Health Service's Motion to Dismiss (**Doc. No. 117**) be **GRANTED**; and

4.     Plaintiff Gregory A. Scher's Amended Complaint (**Doc. No. 78**) be **DISMISSED WITH PREJUDICE** in its entirety.

[Signature on following page.]

---

[4]     As a result, this Court does not reach Defendant Bordt and Feda's arguments for qualified immunity or summary judgment. The Court did analyze Scher's initial Complaint for likelihood of success due to Scher's motion for a preliminary injunction, and found that Scher's claims lack merit. Scher's Amended Complaint does not substantively differ in that he asserts he sustained a shoulder and knee injury as a result of a defective wheelchair. There is nothing about Scher's Amended Complaint that would alter the Court's previous analysis.

Date: May 27, 2021                          _s/ Becky R. Thorson_
                                            BECKY R. THORSON
                                            United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1) and the Court's May 24, 2021 Order (Doc. No. 133), a party may file and serve specific written objections to this Report **no later than July 31, 2021**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).